MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,

v.

Jonathon P. GOODSON, Defendant.

No. EV 93–7–C.

United States District Court, S.D. Indiana, Evansville Division.

Jan. 22, 1993.

Van T Willis, Kightlinger & Gray, Evansville, IN, Chris Coss, Rubin & Associates, Paoli PA, for Merrill Lynch Pierce Fenner.

Anthony Paduano, Smith Campbell & Paduano, New York City, Paul E. Black, Bowers Harrison Kent & Miller, Evansville IN, for Jonathon P. Goodson.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before the Court on Merrill Lynch's Motion for a Preliminary Injunction. A hearing was held on this motion on 19 January 1993.

## MOTION TO STRIKE

As a preliminary matter the Court *sua sponte* moves to strike Merrill Lynch's Exhibits A, B, D, and Appendix A to the Merrill Lynch's Memorandum in Support of the Mo-

tion except for number 13; and Appendix A and B attached to Goodson's Memorandum except for Numbers 20, 26, 31, 37. A brief review of Merrill Lynch's Exhibits A, B, and D reveals that they are three unpublished United States District Court opinions. A brief review of Merrill Lynch's Appendix A reveals that it is a compilation of 92 cases: 63 unpublished United States District Court opinions, 26 unpublished state trial court opinions, one unpublished state appellate court opinion, one unpublished Fifth Circuit opinion, and one ·published Fourth Circuit opinion (# 13). A brief review of Goodson's Appendix A reveals that it is a compilation of 37 cases: 12 unpublished United States District Court opinions, 19 unpublished state trial court opinions, one unpublished state appellate court opinion, three published United States District Court opinions (# 26, # 31, # 37), one published Eighth Circuit opinion (# 20), and a one unpublished appellate court opinion on the face of which it is impossible to determine the Court of origin (# 28). A brief review of Goodson's Appendix B reveals that it is a compilation of unpublished arbitration decisions. Except for Merrill Lynch's Appendix A # 13, Goodson's Appendix A # 20, # 26, # 31, and # 37, none of these opinions has any precedential value except. as the law of the case. Since the current proceeding does not relate to any of these prior proceedings, they are stricken. The use of a "Stack O' Cases" to persuade the Court is inappropriate. The parties are instructed not to place the unpublished Orders of this Court amongst these others if they present this improper "Stack O' Cases" to another judge in the future.

## PRELIMINARY INJUNCTION

■ Merrill Lynch seeks a Preliminary Injunction prohibiting Goodson from:

(a) soliciting any business from any ·client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business or account transfers from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer, including,

without limitation, all individuals and entities referenced on Exhibit "C" to Plaintiff's Complaint (excluding immediate family and clients residing over 100 miles from the Evansville, Indiana Merrill Lynch office);

 (b) using, disclosing, or transmitting information contained in the records of Merrill Lynch, including the names, addresses, and financial information of said clients, including without limitations the clients referenced in said Exhibit "C"; and that original records and copies thereof be immediately returned to Plaintiff;

The standards for the issuance of a preliminary injunction have been established for this Court by the Seventh Circuit.

 As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. *Lawson Prods [v. Avnet, Inc.],* 782 F.2d [1429,] at 1433 [ (7th Cir.1986) ]; *Roland Mach. [v. Dresser Indus.],* 749 F.2d [380,] at 386–87 [ (7th Cir.1984) ]. If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be denied. If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to nonparties. *Lawson Prod.,* 782 F.2d at 1433; *Roland Mach.,* 749 F.2d at 387–88.

 The court, sitting as would a chancellor in equity, then "weighs" all four factors in deciding whether to grant the injunction, seeking at all times to "minimize the costs of being mistaken." *American Hosp. Supply [v. Hospital Prods. Ltd.],* 780 F.2d [589,] at 593 [7th Cir.1986) ].

*Abbott Labs v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992).

The first prong of the test is some likelihood of success on the merits. Merrill Lynch does have some likelihood of success. Goodson signed an Account Executive Trainee Agreement which provided:

 2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients of Merrill Lynch whom I served or other clients of Merrill Lynch whose names became known to me while in the employ of Merrill Lynch in the office of Merrill Lynch in which I was employed, and who reside within one hundred miles of the Merrill Lynch office in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form.

Goodson Account Executive Trainee Agreement at 1. Goodson terminated his employment with Merrill Lynch on 4 January 1993.

The second prong of the test is that Merrill Lynch has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. Merrill Lynch has no adequate remedy at law because even though it might be possible to track each of the departing clients and all of the business they generate and all of the referrals they make to their broker, it is impossible to determine accurately how many would have made different investments because of the different opportunities presented to them through Merrill Lynch, how many would have otherwise terminated their relationship with Merrill Lynch because of the turmoil in the Evansville office, or even how many would have otherwise terminated their relationship with Merrill Lynch because of allegations that Merrill Lynch management directed the churning of accounts. Thus, even following the clients would only yield a speculative measure of damages. Furthermore, it is unreasonable for this Court to track this case for five, ten, twenty or more years while all of these transactions occur; and though it is possible to determine the present value of this business for any number of years, projecting the amount of that business would be speculative.

The third prong of the test is to balance the irreparable harm the non-moving party will suffer if preliminary relief is granted against the irreparable harm to the moving party if relief is denied. Goodson, himself, is not substantially harmed. He is not foreclosed opportunities from which to pursue a livelihood. He is free to solicit any client as long as he did not learn about them through his employment with Merrill Lynch. If the injunction is later lifted, Goodson will have lost nothing since he would once again have the right to solicit Merrill Lynch clients.

The fourth prong of the test is the public interest. Merrill Lynch seeks to prevent Goodson from servicing accounts which have or might transfer. This violates a client's right to obtain financial advice from the source of his choice. This public interest outweighs Merrill Lynch's interest in preventing Goodson from obtaining this business. To prohibit a client from transferring his business to Goodson would create a substantial harm. As the testimony and argument presented during the hearing, as well as all financial industry advertising, makes clear: a broker client relationship is one of trust. It is not merely the mechanical process of giving advice and executing orders, rather it is a personal relationship which allows a client to sleep easy knowing that his financial interests are well shepherded. For this reason it is necessary in the interests of justice for the Court to grant additional relief and order Merrill Lynch to inform any inquiring client that Goodson continues to work as a licensed broker for Prudential Securities, Inc. in Evansville.

Goodson's argument concerning the equitable doctrine of unclean hands is inapplicable to this case because Goodson has only presented evidence that Merrill Lynch has acted inequitably towards others, not himself. Therefore Merrill Lynch does not come with unclean hands as regards Goodson.

MERRILL LYNCH RECORDS

Any records, copies of records, or data compilations of client information which are the property of Merrill Lynch and which Goodson possesses should be returned to Merrill Lynch by noon on 25 January 1993. In accordance with the Account Executive Trainee Agreement all Merrill Lynch records are the property of Merrill Lynch along with the names and addresses of the clients. Nevertheless, Goodson's personal or professional notes are not a part of Merrill Lynch records and are not Merrill Lynch property. Therefore Goodson's notes are not subject to this order. The client names on those notes are Merrill Lynch property, therefore Goodson is ordered not to utilize the names on these notes except for clients who have transferred their business to Goodson. This exception permits Goodson to meet the public interest of servicing transferred accounts by looking up by name his notes about those particular clients.

CONCLUSION

The Court, after weighing all the factors and evidence, finds that Merrill Lynch has carried its burden for the issuance of a limited preliminary injunction. A preliminary injunction consistent with this memorandum will issue.

## PRELIMINARY INJUNCTION

This matter having come before the Court on Plaintiff's motion for a preliminary injunction and the Court being duly advised and of the opinion that the Motion should be granted in part and denied in part, it is

ORDERED that Merrill Lynch's Exhibits A, B, D, and Appendix A to the Merrill Lynch's Memorandum in Support of the Motion except for number 13; and Appendix A and B attached to Goodson's Memorandum except for Numbers 20, 26, 31, 37 is STRICKEN;

ORDERED that Jonathon P. Goodson is enjoined from soliciting any client (excluding his immediate family) of Merrill Lynch's who lives within one hundred miles of the Evansville Merrill Lynch office whom Goodson learned of while in the employ of Merrill Lynch;

ORDERED that Goodson may continue to service any clients he may have and may respond to any client-initiated contacts;

ORDERED that Merrill Lynch will inform any inquiring client that Goodson continues

to work as a licensed broker for Prudential Securities, Inc. in Evansville;

ORDERED that Goodson return to Merrill Lynch any records, copies of records, or data compilations of client information which are the property of Merrill Lynch (Goodson's notes are not subject to this order) by noon on 25 January 1993;

ORDERED that Goodson not utilize the names on his notes except for clients who have transferred their business to Goodson, and

ORDERED that this Injunction expires on 4 January 1994 unless otherwise ordered by this Court.